STATE OF NORTH CAROLINA v. GEORGE JUNIOR JENNINGS

No. 45

(Filed 10 November 1971)

**1. Criminal Law § 113; Homicide § 28— statement of evidence — application of law thereto**

In this manslaughter prosecution, the trial court sufficiently stated the evidence relating to self-defense and explained the law arising thereon as required by G.S. 1-180, although the court referred to the evidence by its substance in the form of contentions rather than by a recital of the words of the witnesses.

**2. Criminal Law § 111— instructions — speed with which read to jury**

Defendant's objection based on the speed with which the judge read the charge to the jury, *held* without merit, especially since the jury had a typewritten copy of the charge during its entire deliberation.

APPEAL by defendant from *Johnston, J.,* February 8, 1971 Regular Criminal Session, GUILFORD Superior Court, High Point Division.

The defendant, George Junior Jennings, was indicted at the September 1968 Session of the court on a charge of murder in the killing of Willie Edward Gibson. The defendant was tried at the December 9, 1968 Session and was convicted of manslaughter. From a sentence of not less than seven nor more than ten years he appealed to the North Carolina Court of Appeals. The court heard the appeal and found no error in the trial. The decision is reported in 5 N.C. App. 132, 167 S.E. 2d 784.

On defendant's petition, this Court granted certiorari and after argument and consideration here a new trial was ordered for error in the charge on the issue of self-defense. The decision is reported in 276 N.C. 157, 171 S.E. 2d 447. The evidence before the court in the first trial is recited and discussed both by the Court of Appeals and by this Court. The evidence in the case before us now is in substance the same as that reported and considered by both the Court of Appeals and this Court on the first review.

Again the jury convicted the defendant of manslaughter. The court imposed a prison sentence of not less than seven nor more than ten years. The defendant again appealed. Our referral order of July 31, 1970, brought the appeal here for our second review.

*Robert Morgan, Attorney General by Ralph Moody, Deputy Attorney General for the State.*

*Arch K. Schoch, Jr. for defendant appellant.*

HIGGINS, Justice.

The defendant's appeal (as stated in the brief) presents two questions: (1) Did the court fail to recite the substance of the evidence and explain the law arising thereon to the jury as required by G.S. 1-180? and (2) "Did the trial court commit error by delivering its charge with such brevity and speed that it could not possibly have been intelligently understood by the jury?"

At the trial the defendant, in apt time, filed written request for instructions dealing especially with the right of self-defense. In addition, the defendant requested that the court's entire charge be reduced to writing and a copy delivered to the jury for its guidance during the pre-verdict deliberation. The court complied with the request to transcribe the charge and to deliver a copy to the jury. The heart of the charge dealt with the defendant's right of self-defense. We quote here material portions of what the court told the jury:

> "Now, members of the jury, the court instructs you that, under the law of this State manslaughter is the unlawful killing of a human being by another human being.
>
> If the State has satisfied you beyond a reasonable doubt that the defendant intentionally shot and killed the deceased with a deadly weapon, to wit, a 22 caliber rifle, the law raises the presumption that the killing was unlawful and as you have been instructed, an unlawful killing of a human being by another human being is manslaughter.
>
> \*    \*    \*    \*
>
> Now, members of the jury, the defendant in this case, . . . pleads self-defense. Our law recognizes the right of self-defense, but it says that it is based on necessity, either real or apparent. A person may kill another person when it is necessary in order to protect himself from death or great bodily harm. A person may kill another person when it is not actually necessary, if he believes it to be necessary and if he has reasonable grounds for his belief,

in order to protect himself from death or great bodily harm; but it is for the jury to say, not for the defendant to say, the reasonableness of his apprehension, but the jury shall make this determination in the light of the circumstances as they reasonably appeared to the defendant at the time that the fatal shot was fired.

Now, members of the jury, all persons do not have the right of self-defense. A person who is an aggressor, that is, a person who enters into an encounter with another person willingly, in the sense of voluntarily and without just cause, excuse or justification, he doesn't have the right of self-defense.

There is evidence before you in this case that the defendant and Naomi Gibson, wife of the deceased, had associated with one another and dated each other for a period of approximately five years just before July, 1968, and further, that defendant had assisted Naomi Gibson in removing herself and her children from the home of the deceased on July 17, 1968, and taken them to the home of her father. The court instructs you that he is not to be deprived of the right of self-defense solely by reason of such conduct or association with the deceased's wife. The court further instructs you that the defendant is not to be deprived of his right of self-defense solely by reason of the fact that he came to the roadway in front of the Clawson residence in his automobile and stopped it there.

\* \* \* \*

If the deceased attacked the defendant, however, with the intent to kill him, or when it reasonably appeared to the defendant that by reason of the attack that he was in danger of suffering death or great bodily harm, the defendant would have no duty to retreat before he could kill the deceased in self-defense.

The court further instructs you that if the defendant was acting in self-defense but used a greater amount of force than was necessary, or reasonably appeared to him to be necessary, to protect himself from death or great bodily harm, then he would be guilty of manslaughter.

\* \* \* \*

You shall take your recollection of the evidence and consider it in its entirety in reaching your verdict. The

State contends that you should convict the defendant. The defendant contends that you should acquit him.

* * * *

Your verdict must be unanimous, and you will return one of the two following verdicts: one, guilty of manslaughter; or, two, not guilty, depending entirely upon how you, the jury, find the facts under the evidence and the court's instructions as to the law."

The defendant, as a witness for himself, testified describing his association over a number of years with the wife of the man he killed. He described the previous unfriendly relations between them. He testified he and the deceased had had an altercation earlier in the day during which the deceased had assaulted him. By way of explanation as to why he was looking for the deceased immediately before the fatal shooting, he said: "So I wanted to find out why he hit me then." He explained the possession of a rifle in his automobile by saying that he intended to pawn it. He did admit, however, that just before he left home he loaded live cartridges into the magazine. At the time of the actual confrontation, the defendant testified the deceased was attempting to assault him with a pistol, did shoot at him and that he (defendant) fired the fatal shots in self-defense. There was neither claim nor evidence of accident or misadventure.

The crucial question, therefore, before the jury was whether the defendant had satisfied the jury that he killed his adversary in his own necessary, or apparently necessary, self-defense. The defendant's written request for instruction was confined solely to the question of self-defense. *State v. Gordon,* 241 N.C. 356, 85 S.E. 2d 322; *State v. Matthews,* 263 N.C. 95, 138 S.E. 2d 819; *State v. Todd,* 264 N.C. 524, 142 S.E. 2d 154; *State v. Fowler,* 268 N.C. 430, 150 S.E. 2d 731; *State v. Barrow,* 276 N.C. 381, 172 S.E. 2d 512.

[1, 2] The defendant's objection based on the speed with which the judge read the charge does not seem to be valid, especially since the jury had a typewritten copy during its entire deliberation. The court, in the main, referred to the evidence by its substance in the form of contentions, rather than by recital of the words of the witnesses. There is a lack of indication that the jurors were in any wise misled or confused. Moreover,

defense counsel failed to request any additional instruction or amplification of the testimony.

The evidence discloses this tragedy grew out of a dispute between the defendant and the deceased as to which had the superior equity in the affections of the latter's wife. Two juries have convicted the defendant of manslaughter. Two able judges have each imposed a prison sentence of not less than seven nor more than ten years. The trial, verdict and sentence are amply supported by the record before us in which we find

No error.